UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CASEN CARVER and EVERETT LEE,<br><br>                        **Plaintiffs,**<br><br>v.<br><br>NANCY GRACE, FOX NEWS, INC., IHEARTMEDIA, INC., and ASHLEY BAUSTERT,<br>                        **Defendants** | CIVIL ACTION NO: 24-2158<br><br>SECTION "J" DIVISION "5"<br><br>JUDGE: CARL J. BARBIER<br><br>MAGISTRATE JUDGE: MICHAEL NORTH |

**DEFENDANTS NANCY GRACE AND IHEARTMEDIA + ENTERTAINMENT, INC.'s REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants Nancy Grace and iHeartMedia + Entertainment, Inc. ("Defendants") submit this Reply Memorandum in Support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to address the Opposition (Rec. Doc. 51) of Plaintiffs Casen Carver and Everett Lee ("Plaintiffs").[1]

### INTRODUCTION

Plaintiffs cherry pick fragments from within the allegedly defamatory statements to suggest they have met the requisite pleading standards. But as Plaintiffs concede regarding defamation, "the entirety of the broadcast must be read as a whole."[2] In context, it is clear the statements are not actionable.

### LAW & ARGUMENT

**1.    Plaintiffs cannot shift the burden of showing falsity, fault, and injury.**

Plaintiffs misstate the law on defamation. When speech involves a matter of public concern, the burden of proving the elements of falsity, fault (or malice), and injury is the plaintiff's.

---

[1] This Reply addresses Nancy Grace's statements distributed on iHeartMedia platforms. *See* Rec. Doc. 1-1, Petition ¶¶ 14, 77-79, 82-84, 98-99, 103-105. Fox News' Reply addresses Ms. Grace's statements on Fox News.
[2] Rec. Doc. 51, p. 26.

*Phila. Newspapers v. Hepps*, 475 U.S. 767, 775–76 (1986). It is no longer the law that in cases of alleged defamation *per se*, these elements are presumed. *Kennedy v. Sheriff of E. Baton Rouge* 935 So. 2d 669, 676 (La. 2006), citing *Hepps*.[3] Plaintiffs, either aware that they cannot meet this burden or unaware that the law has changed, improperly attempt to shift the burden onto Defendants contrary to governing law.[4]

**2.     Plaintiffs misstate the law on substantial truth.**

In addressing falsity, Plaintiffs again misstate the law. A publication is protected from liability for defamation if it is substantially true, meaning its "gist" or "sting" is true. *Collins v. WAFB, LLC*, No. 16-15648, 2017 WL 1383948, at *6 (E.D. La. Apr. 18, 2017); *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (statement not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth produces). As this Court recognized in its Order & Reasons denying Plaintiffs' Motion to Remand, for a statement to be substantially true, "[u]nimportant details need not be accurate."[5] Additionally, "[f]or a statement to be actionable, the falsity must be significant or 'of sufficient magnitude.'"[6] Plaintiffs' argument that only errors in "legal terminology" or a "technicality" can be substantially true is incorrect.[7] *See Masson*, 501 U.S. at 517 (to distinguish between technical differences and "some greater level of alteration" is an "unnecessary departure from First Amendment").

---

[3] *Hoffman, see* Rec. Doc. 51, p. 7, is inapposite, at it focused on the conditional privilege defense. 257 F. Supp. 3d at 837–38.
[4] Even as Plaintiffs erroneously insist that fault is presumed, they assert that Defendants acted with actual malice because Ms. Grace "knew" that Ms. Brooks "was dropped off in a neighborhood," instead of on Burbank Drive. Rec. Doc. 51, p. 22. As this Court already has held, it is substantially true that Plaintiffs dropped off Ms. Brooks on Burbank Drive, and so, Plaintiffs have not shown actual malice or fault.
[5] Rec. Doc. 48, p. 8 (quoting *Romero v. Thomson Newspapers*, 94-1105 (La. 1/17/95), 648 So. 2d 866, 870).
[6] Rec. Doc. 48, p. 8 (quoting *Cyprien v. Bd. of Supervisors*, 08-1067 (La. 1/21/09), 5 So. 3d 862, 867).
[7] Rec. Doc. 51, p. 14 citing *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1073 (5th Cir. 1987).

### 3. Plaintiffs' analysis of opinion doctrine is misleading and outdated.

In Louisiana, a statement of opinion relating to matters of public concern that does not contain a provably false factual assertion is entitled to full constitutional protection. *Johnson v. Purpera*, 320 So. 3d 374, 394 (La. 2021) (citing *Mashburn v. Collin*, 355 So.2d 879, 885 (La. 1977) ("expression of opinion occurs when the maker of the comment states the facts on which his opinion of the plaintiff is based and then expresses a comment").

The Fifth Circuit applied this widely accepted doctrine in *Favre v. Sharpe*, 117 F.4th 342, 348 (5th Cir. 2024). Under either Mississippi or Louisiana law, an opinion is not actionable in defamation when based on disclosed facts. 117 F.4th at 348; *Johnson*, 320 So. 3d at 394. "The crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." *Johnson*, 320 So. 3d at 394 (quoting *Mashburn*, 355 So.2d at 885).[8] Under a correct application of defamation law addressing opinion, Plaintiffs' claims fail.

### 4. A speaker who relies on information from law enforcement is not at fault.

Louisiana courts repeatedly have held that when a speaker relies on information obtained from law enforcement, the speaker is not at fault and cannot be liable for defamation—even if the statements are false. *See, e.g. Wilson v. Cap. City Press*, 315 So. 2d 393 (La. App. 3rd Cir. 1975) (no fault attributable to defendants who wrote, in reliance on police spokesperson, that plaintiff was arrested in drug raid when he had not been involved). Even when all criminal charges are dismissed, there is no fault, as a matter of law, for having relied on law enforcement statements.

---

[8] Rather than address modern-era opinion cases, Plaintiffs dredge up a 1962 case about the qualified privilege of fair comment. *See* Rec. Doc. 51, pp. 17, 22. (citing *Miller, Smith & Champagne v. Cap. City Press*, 142 So. 2d 462 (La. App. 1962)). *Miller* is inapplicable because it discusses the pre-*Hepps* burden of proof, and further, did not decide whether there was defamation. 142 So. 2d at 470, 477.

*See Green v. Wal-Mart La., LLC*, 55-717 (La. App. 2d Cir. 7/17/24), 2024 WL 3434411, at *5 (dismissal of criminal charges against plaintiff had no bearing on court's determination that defendants were not liable for defamation when they relied on law enforcement statements).[9]

Plaintiffs cite *Tresca v. Maddox* for the assertion that a defendant can report the fact of an arrest but not "assume the guilt of the plaintiff" and "heap accusations of other crimes upon his head."[10] *Tresca*—which was decided more than 150 years ago and involves libel against the "captain of a schooner in the Tampa Bay trade" accused of steamboat piracy—was decided well before *Hepps*, when "malicious intent [was] an inference of law, and therefore need[ed] no proof." 11 La. Ann. 206. Plaintiffs' assertion that Defendants abused the fair report privilege (a privilege they have not asserted) by supposedly assuming Plaintiffs' guilt is both irrelevant and out of step with Louisiana law.

Rather than engaging with applicable, modern defamation doctrine, Plaintiffs cite cases that do not apply here because they involve false statements made by or to law enforcement, as opposed to a media defendant who relies on information obtained from law enforcement.[11] Plaintiffs cite *Trentecosta v. Beck* but concede the case involves "a police officer [going] beyond the facts uncovered by the investigation."[12] Plaintiffs omit that the court found another defendant, who was not fabricating allegations, not at fault and not liable for defamation. 703 So. 2d at 562. Because Defendants relied on law enforcement reports, Plaintiffs' claims against them fail.

5. **The following statement is not actionable: "There's no way, this little girl, consented to have sex in the backseat, of a car, while someone is videoing, and laughing, and she's saying no, and she's drunk, and they find I believe it's anal tears and bruising and they find the defendants DNA on her person, is it so hard for you to believe**

---

[9] Plaintiffs conflate Defendants' argument on the element of fault with the privilege defense, but again, Defendants have not asserted the privilege. Under modern defamation law, the burden is on Plaintiffs to prove fault. *Hepps*, 475 U.S. at 775–76; *Kennedy*, 935 So. 2d at 676. *See* Rec. Doc. 40 at pp. 31-36.
[10] Rec. Doc. 51, pp. 7, 12-13 (citing *Tresca v. Maddox*, 11 La. Ann. 206, 206 (1856).
[11] See Rec. Doc. 51, pp. 18-19 (citing *Trentecosta*, 703 So. 2d 552; *Alexander v. La. State Bd. of Private Investigator Exam'rs*, 211 So. 3d 544, 565 (La. App. 4 Cir. 2017).
[12] Rec. Doc. 51, p. 13 (citing *Trentecosta*, 703 So. 2d 552, 562 (La. 1997).

**Ferrintino that the perps withdrew before they ejaculated, I mean there's really no nice way to explain that, but is that so hard for anybody to believe because I find it very easy to believe."**

Plaintiffs do not argue it is untrue that "someone is videoing, and laughing," or that "she's drunk," while the incident with Ms. Brooks unfolds. Nor do they contest that Ms. Brooks sustained "anal tears and bruising," or that "they find the defendants DNA on her person." Instead, Plaintiffs focus on two snippets within the larger statement: "There's no way, this little girl, consented to have sex in the backseat" and "the perps withdrew before they ejaculated."

With the first statement, Ms. Grace expressed her opinion that Ms. Brooks did not consent, based on the disclosed facts that Ms. Brooks was "drunk," was "saying no" while "someone is videotaping, and laughing," and that physical evidence of non-consensual sex was found.[13] Indeed, Ms. Brooks' blood alcohol content was reported to be .319% by medical examiners.[14] Further, as news media reported, Ms. Brooks can be heard saying "no" on the video filmed by Carver.[15] Based on these facts, recited within her statement, Ms. Grace expressed her opinion that "[t]here's no way, this little girl, consented to have sex." Under Louisiana law, a person cannot consent to sex when she is incapacitated by alcohol.[16] There is no indication that Ms. Grace relied on additional undisclosed facts for her opinion. Just like the speakers in *Favre* and *Breen v. Holmes*, 236 So. 3d 632 (La. App. 1 Cir. 2017), who expressed opinions about criminal matters based on disclosed facts, Ms. Grace's opinion is not actionable.

The remaining portion of Ms. Grace's statement, a question to her guest, attorney Jarrett Ferrintino, also is not actionable. As Plaintiffs concede, the WBRZ report that Ms. Grace refers to

---

[13] *See* Rec. Doc. 1-1, Petition, Exhibit A, WBRZ Report; Rec. Doc. 1-10, Carver Arrest Warrant pp. 2-5.
[14] Rec. Doc. 1-10, Carver Affidavit for Arrest Warrant, p. 3.
[15] Rec. Doc. 25-3, at 30:21-25 ("[Guest Bill Hernandez]: And then plus she was heard in the background on the video telling the suspects 'No' and to get off her.'").
[16] La. R.S. § 14:43(A)(2) (Third degree rape is rape "without the lawful consent of a victim . . . [w]hen the victim, through unsoundness of mind, is temporarily or permanently incapable of understanding the nature of the act and the offender knew or should have known of the victim's incapacity.")

features a statement by public defender Jarret Ambeau, who offers his opinion that Ms. Brooks was not raped (or penetrated vaginally) based on the fact that Washington's DNA was found on the exterior of her genitals.[17] Ms. Grace's question—"is it so hard for you to believe Ferrintino that the perps withdrew before they ejaculated?"—is prompted by Mr. Ambeau's alternate *opinion*, based on disclosed facts, regarding the events of that evening.[18]

Plaintiffs' argument that this is not found in a police report is both incorrect and irrelevant.[19] The relevant issue is how "ordinary persons hearing this statement would be likely to understand it." *Fitzgerald v. Tucker*, 737 So. 2d 706, 719 (La. 1999). Contrary to Plaintiffs' misleadingly truncated quote, Ms. Grace does not state, "the perps withdrew before they ejaculated," but rather, she asks her guest whether it is hard for him to believe such an explanation based on other disclosed facts. *See Sassone v. Elder*, 626 So. 2d 345, 353 (La. 1993) (question posed "for public consideration, thereby expressing suspicion" was not defamatory).

Plaintiffs also argue they are ascertainable as the "perps." Plaintiffs' argument is foreclosed by Ms. Grace's immediately prior statement that investigators found "the defendants DNA on [Ms. Brooks'] person," and shortly thereafter, by her specific identification of the DNA as being that of criminal defendant Kaivon Washington.[20] Given the overall context of the podcast, "perps" does not refer to Plaintiffs.[21]

Plaintiffs' suggestion that showing photographs of Plaintiffs (along with criminal defendants Kaivon Washington and Desmond Carter)) means that *all* statements made by Ms.

---

[17] Rec. Doc. 51, p. 11.
[18] Moreover, although Plaintiffs treat it as a certainty, it is unknown whether they engaged in sex acts with Ms. Brooks, and Ms. Brooks cannot provide testimony on the same because she is deceased.
[19] *See* Rec. Doc. 51, p. 11. As noted above, the fact that Washington's DNA was found on Ms. Brooks' body was contained in the autopsy report. *See id.*
[20] *See* Rec. Doc. 25-2, Crime Online Show Transcript, at 13:12-13, 29:17-18; Exhibit A to Rec. Doc. 25 (Manual Attachment), Crime Online Show Video at 10:58-11:02, 25:30-40.
[21] Moreover, Carver was indicted for first- and third-degree rape, so it would not be actionable for the statement to refer to him, as it is substantially true that he is charged with rape.

Grace at *any* point apply to Plaintiffs is unsupported by logic or caselaw.[22] The outdated case Plaintiffs cite, *Peck v. Tribune Co.*, 214 U.S. 185 (1909), is completely inapposite. In *Peck*, the alleged libel occurred when a newspaper published a photograph of the plaintiff without consent, misidentifying her as a "Mrs. A. Schuman," and quoted her as advertising whiskey. *Id.* at 188. The Supreme Court determined that the statement concerned the plaintiff because "[m]any might recognize the plaintiff's face without knowing her name, and those who did know it might be led to infer that she had sanctioned the publication under an alias." *Id.* By contrast, here, Plaintiffs were not misidentified or improperly quoted. The mere use of a photograph at some point in a news coverage cannot make everything in that news coverage "of and concerning" every person shown.

**6.     Statements regarding Ms. Brooks' exit from the car are not actionable.**

Plaintiffs complain about statement fragments related to Ms. Brooks' exit from Plaintiffs' car shortly before her death: "they put her out of the car on a busy freeway," "[i]n the middle of the night, in the rain, heavy traffic flying by, they put her out the car and bam, she gets run over, and dies, after she gets raped," "[t]hey're lucky, and I don't get it," and "[t]hese guys should be thanking their lucky stars they're not charged with murder."[23]

This Court already determined that similar statements by Ms. Baustert are nonactionable because they are substantially true. In denying Plaintiffs' Motion to Remand, the Court considered whether Ms. Baustert's statements suggesting, according to Plaintiffs, that "they" caused Ms. Brooks' death by dropping her off "on Burbank Drive" was defamatory. The Court held "that the 'gist' or 'sting' of Defendant Baustert's statement is the fact that the Plaintiffs dropped off Madison Brooks alone on a road at night when she was highly intoxicated without a cell phone, not that she

---

[23] Rec. Doc. 1-1, Petition ¶¶ 79, 99; ¶¶ 82, 103.

was dropped off on Burbank Drive."[24] In holding Ms. Baustert's statement to be substantially true, the Court pointed out that "Plaintiffs acknowledge that they left Madison Brooks within proximity of Burbank Drive, a major road, alone and intoxicated, in the earlier hours of the morning."[25]

Additionally, as is apparent from the full statement, Ms. Grace's comment that Plaintiffs and their companions are "lucky" and should be "thanking their lucky stars" that they have not been charged with murder is clearly her protected opinion. Indeed, this Court determined that a similar statement by Ms. Baustert is opinion, that she "would like to see an additional negligent homicide charge as well, especially for the driver, who dropped her off in that condition, because that's inevitably what killed her was being put in that situation."[26] Ms. Grace's statements are not actionable for the same reasons that Ms. Baustert's similar comments are not actionable—that is, they are substantially true and further are protected opinion.

Ms. Grace's opinion as to appropriate charges for Ms. Brooks' death is also based on the disclosed fact of the State's decision to bring felony rape charges related to the incident. Plaintiffs' argument, that the statement is not opinion because it suggests Ms. Grace knew facts that the grand jury did not, is not tenable. Given the facts Ms. Grace disclosed, merely because the grand jury pretermitted the indictment does not suggest that she knew additional undisclosed facts.[27]

Moreover, Plaintiffs' caselaw does not support their argument. They misleadingly cite *Hahn v. City of Kenner*, 984 F. Supp. 436 (E.D. La. 1997), for the dubious proposition that there "is no protection for opinion that accuses individuals of additional crimes,"[28] yet *Hahn* addresses the opinion doctrine only in passing. *Hahn* analyzes a defendant's statement that the plaintiff "held

---

[24] Rec. Doc. 48, p. 9.
[25] Rec. Doc. 48, p. 9.
[26] Rec. Doc. 48, p. 11.
[27] And again, charges under a pretermitted indictment can be reinstated by prosecutors. *See* Rec. Doc. 40, p. 12 n.25 (discussing the same).
[28] Rec. Doc. 51, p. 18.

his family at bay, resisted arrest, and had to be wrestled to the ground to be disarmed," a factual statement that the Court found was not substantially true. *See id.* at 433. The Court addressed opinion only insofar as to state that the defendant could not make up false statements that he then offered an opinion upon. *Id.* 443. *Hahn* is not applicable here.

Plaintiffs' reliance on *Bussie*'s and *Milkovich*'s hypothetical examples that "in my opinion Mr. Smith is a thief" and "in my opinion John Jones is a liar" is misplaced.[29] Defendants here do not rely on the talismanic statement "in my opinion" as a shield to liability. Rather the overall context establishes that the statement at issue is Ms. Grace's opinion, based on disclosed facts. The law protects even "harsh" opinions such as Ms. Grace's that the actions of Plaintiffs and their cohorts should give rise to murder charges.[30] Plaintiffs argue that Ms. Grace's "opinions go even further" than the opinions hypothesized in *Milkovich* and *Bussie*.[31] Unlike those examples, however, Ms. Grace disclosed the facts upon which her opinion was based, and thus did not "impl[y] a knowledge of facts which lead to [her] conclusion." *See Milkovich*, 497 U.S. 1, at 18–19. Accordingly, just as in *Favre*, *Breen*, and *Bussie*, Ms. Grace's opinions are nonactionable.[32]

**7.     The following statement is nonactionable: "Sometimes you have to go to hell to get the witness to put the devil in jail. I really believe if you tried these four together, put them on the same pot to stew, there would be a conviction, on every one of them, because they're in it together and the video, truly the video, they thought was such a good idea, that is the nail in the coffin."**

An "ordinary person" hearing this statement would understand that Ms. Grace is offering her opinion. *See Fitzgerald*, 737 So. 2d at 719. Ms. Grace specifies that she "really believed" if

---

[29] *See* Rec. Doc. 51, p. 15 (quoting *Bussie*, 535 So. 2d at 381).
[30] *Foote v. Sarafyan*, 432 So. 2d 877, 880 (La. App. 4th Cir. 1982) (harsh opinion that plaintiff committed "payroll fraud" was based on publication of underlying facts and non-defamatory); *Favre*, 117 F.4th at 347 (statements that Favre "stole" from poor people were "better viewed as strongly stated opinions"); *Breen*, 236 So. 3d 632 at 639–40 (statement that plaintiff committed "premeditated murder" was opinion).
[31] Rec. Doc. 51, p. 19.
[32] Plaintiffs also argue qualified privilege and actual malice (which Defendants have not raised), Rec. Doc. 451, pp. 6-7, 22, 25-26, but neither issue is relevant to the dispositive substantial truth and opinion issues.

the men were tried together, they would be convicted. Ms. Grace's statement is hypothetical and, attenuated further from defamation, predictive of a future event. Plaintiffs' leap from Ms. Grace's actual language to the conclusion that she "accuses all four men of rape" paints far too broadly.[33]

8. **The following statement is not actionable: "they gave very detailed statements about what happened to Madi, in fact, the ones in the front seat rotating into the back seat so they can also assault her."**

Plaintiffs again misapply the law by arguing that only a technical error is protected under the "substantial truth" doctrine. But distinguishing between technical differences and "some greater level of alteration" is an "unnecessary departure from First Amendment principles," and a deviation from defamation law. *See Masson*, 501 U.S.at 517. Indeed, as this Court recognized, "'[u]nimportant details need not be accurate' for a statement to be substantially true."[34] The statement is substantially true because the car's occupants did get in and out and "rotate" positions as they had sex with Ms. Brooks.[35] Any errors are corrected within the program, as just after the statement above, Ms. Grace and her guest clarify that Lee has not been charged with rape and Carver is not accused of physically assaulting Ms. Brooks.[36] Plaintiffs agree that if a publication contains an error that is corrected, there is no defamation.[37] Here, the statement is not actionable because the "average viewer should be alerted to the errors . . . and understand that [plaintiff] was not accused" of the crime at issue. *Bayhi*, 2017 WL 4082241 at *5.

## CONCLUSION

The Court should dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim against Defendants as a matter of law.

---

[33] *See* Rec. 51, p. 22.
[34] Rec. Doc. 48, p. 8 (quoting *Romero v. Thomson Newspaper (Wisc.), Inc.,* 648 So. 2d 866, 870 (La. 1995).
[35] Rec. Doc. 1-10, Carver Affidavit for Arrest Warrant, p. 3; *see also* Rec. Doc. 25-1, pp. 19-23.
[36] Rec. Doc. 25-3, Transcript of Crime Stories Podcast, 35:4-21; Crime Stories Podcast at 32:05.
[37] *See* Rec. Doc. 51, pp. 25-26 (citing *Bayhi v. La. Tele. Broad., LLC*, 17-0100, 2017 WL 4082241, at *2 (La. App. 1 Cir. 9/15/17), *Cortez v. Shirley*, 555 So. 2d 577 (La. App. 1 Cir. 1989), and *Favre*, 117 F.4th at 347).

Respectfully submitted,

BY: <u>/s/ James H. Gilbert</u>
Thomas M. Flanagan (La. Bar #19569)
James H. Gilbert (La. Bar. #36468)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
jgilbert@flanaganpartners.com

Michael Beylkin
*Admitted pro hac vice*
Zansberg Beylkin LLC
100 Fillmore Street, Suite 500,
Denver, CO 80206
Telephone: (303) 564-3669
mike@zblegal.com

**ATTORNEYS FOR DEFENDANTS NANCY GRACE AND iHEARTMEDIA + ENTERTAINMENT, INC.**