UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CASEN CARVER AND EVERETT LEE | CIVIL ACTION |
| VERSUS | No. 24-2158 |
| NANCY GRACE, FOX NEWS, INC., IHEARTMEDIA ENTERTAINMENT, INC., ASHLEY BAUSTERT, FOX NEWS NETWORK LLC, AND IHEARTMEDIA, INC. | SECTION: "J"(5) |

## ORDER & REASONS

Before the Court are Defendants Nancy Grace and iHeatMedia, Inc.'s[1] *Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)* **(Rec. Doc. 25)**, an opposition thereto by Plaintiffs Casen Carver and Everett Lee (Rec. Doc. 51), and a reply (Rec. Doc. 53). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

## FACTS AND PROCEDURAL BACKGROUND

This defamation case derives from the alleged rape and tragic death of an LSU student, Madison Brooks, in Baton Rouge, Louisiana. After a heavy night of drinking,

---

[1] Defendants' motion states:
> The Petition makes "iHeartMedia" a defendant (Rec. Doc. 1-1, Petition ¶ 1.3) and the caption incorrectly identifies iHeartMedia, Inc. as a defendant, but the Court issued a Citation to iHeartMedia + Entertainment, Inc. at Plaintiff's request. iHeartMedia, Inc. is a holding company and the parent of iHeartmedia + Entertainment, Inc. This Memorandum uses "iHeartMedia" to denote all these iHeart Media entities.

(Rec. Doc. 25-1, at 1 n. 1).

Madison Brooks left a Baton Rouge bar with Plaintiffs Casen Carver and Everett Lee and their two male companions, Kaivon Washington and Desmond Carter.

Less than an hour later, Madison Brooks was dropped off at Pelican Lakes Neighborhood, the entrance of which is off Burbank Drive. Madison Brooks was later hit and killed by a motor vehicle on Burbank Drive. Kaivon Washington and Desmond Carter were indicted for raping Madison Brooks in the backseat of the car. Plaintiff Casen Carver, the driver, was indicted for first-degree rape, third-degree rape, and video voyeurism (Rec. Doc. 1-2). Plaintiff Everett Lee rode in the passenger seat and remains under investigation.

Plaintiffs, Louisiana citizens, filed suit, in state court, against Defendants, Nancy Grace, Fox News Network LLC, iHeartMedia, and Ashley Baustert for making allegedly defamatory statements on programs hosted by Nancy Grace. (Rec. Doc. 1-1, ¶ 108). Defendants removed the suit to this Court. Plaintiffs responded by filing a motion to remand, arguing that Defendant Ashley Baustert, the in-state defendant, was properly joined. (Rec. Doc. 34). The Court denied Plaintiffs' motion finding that Defendant Ashley Baustert was improperly joined because Defendant Baustert's statements were not defamatory. (Rec. Doc. 48).

Relevant to this instant motion, Plaintiffs allege Nancy Grace and iHeartMedia made defamatory statements by Nancy Grace on (1) her YouTube program titled "Nancy Grace Analyzes Defense Reaction to Damning Video of Attack on LSU Coed" ("Crime Online Show") and (2) on an episode of Nancy Grace's podcast, distributed by iHeartMedia, *Crime Stories with Nancy Grace*, titled "Haunting Video

of LSU Beauty Madi Brooks Who Dies After 3 Men Allegedly Sex Assault" (Crime Stories Podcast") (collectively, the "Podcasts"). (Rec. Doc. 25-1, at 2).

In response to the allegations, Defendants Nancy Grace and iHeartMedia filed this instant motion to dismiss nine claims against them for failure to state defamation claims as a matter of law. (Rec. Doc. 25-1, at 2).

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

Considering the statements as whole in the context in which they were made, the Court finds Nancy Grace and iHeartMedia's statements are not actionable. The statements are not defamatory because they are either not "of and concerning" the Plaintiffs; substantially true; Nancy Grace's opinion; and/or based on statements of law enforcement officials.

Under Louisiana law, a successful cause of action for defamation requires the existence of the following four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004); *Phillips v. L. Brands Serv. Co.*, 82 F.4th 291, 298 (5th Cir. 2023). The fault requirement is generally considered to be malice, actual or implied. *Kennedy v. Sheriff of East Baton Rouge*, 05-1418 (La. 7/10/06), 935 So. 2d 669, 674. If even one of the elements for a defamation claim is absent, the cause of action fails. *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La. App. 2 Cir. 6/22/01), 792 So. 2d 832.

To be actionable, a defamatory statement must be "of and concerning the plaintiff" or, directly or indirectly, cast a personal reflection on the plaintiff. *Guilbeaux v. Times of Acadiana, Inc.*, 94-1270 (La. App. 3 Cir. 8/09/95), 661 So. 2d 1027, 1031 (citing *Gugliuzza v. K.C.M.C., Inc.*, 606 So. 2d 790 (La. 1992)).

Truth or substantial truth is an absolute defense to an action for defamation. *See e.g., Hopkins v. Keith*, 348 So. 2d 999, 1001 (La. App. 2 Cir. 1977); *Thompson v.*

4

*Lee*, 38,930 (La. App. 2 Cir. 10/27/04), 888 So. 2d 300, 304 (citations omitted). For a statement to be substantially true, "unimportant details need not be accurate." *Romero v. Thomson Newspapers (Wisconsin), Inc.*, 94-1105 (La. 1/17/95), 648 So. 2d 866, 870 (citation omitted). "[T]he First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records." *Cox Broadcasting Corporation v. Cohn*, 420 U.S. 469, 496.

> In reporting matters of public interest involving legal and judicial proceedings and records some errors and inaccuracies are bound to occur in the use of technical terms. Not every error or inaccuracy should be actionable. The error should be a significant variation from the truth to give rise to liability. In order to avoid a "chilling effect" on the exercise of First Amendment rights, the media must be allowed "breathing space.

*Hopkins v. Keith*, 348 So. 2d 999, 1002 (1977). Additionally, the Fifth Circuit has instructed that a statement is substantially true "if its 'gist' or 'sting' is true." *Zerangue v. TSP Newspapers, Inc.*, 814 F. 2d 1066, 1073 (5th Cir. 1987) (citations omitted). "In determining whether the gist and sting of a story is true, the court must view the story through the eyes of the average reader or member of the audience." *Id.* (citations omitted).

Next, a pure statement of opinion is not actionable as defamation, "unless the opinion implies a false and libelous fact." *Johnson v. Purpera*, 2020-01175 (La. 5/13/21), 320 So. 3d 374, 394 (citations omitted). The "crucial difference" between an assertion of fact or an expression of an opinion "depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it

5

as an express of the speaker's [ ] opinion, or as a statement of existing fact." *Id.* (citation omitted).

Lastly, a statement is not defamatory when the defendant relies on statements made by law enforcement, even if the statements are false. *Collins v. WAFB, LLC*, 2017 WL 1383948, *5.

In this case, Defendants Nancy Grace and iHeartMedia move to dismiss the Petition of Plaintiffs Casen Carver and Everett Lee, for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Rec. Doc. 25, at 1). Specifically, Defendants argue that none of the nine allegedly defamatory statements identified in the Petition support a defamation claim against the Defendants. Plaintiffs first allege the following statement by Nancy Grace is not actionable in defamation:

> There's no way, this little girl, consented to have sex in the backseat, of a car, while someone is videoing, and laughing, and she's saying no, and she's drunk, and they find I believe it's anal tears and bruising and they find the defendants[2] DNA on her person, is it so hard for you to believe Ferrintino that the perps withdrew before they ejaculated, I mean there's really no nice way to explain that, but is that so hard for anybody to believe because I find it very easy to believe.

(Rec. Doc. 1-1, at ¶¶ 77, 97). In their motion, Defendants argue that this statement "is not actionable in defamation because portions or it are not 'of and concerning' Plaintiffs; it relies on law enforcement reports; portions are not a 'defamatory

---

[2] Note: Plaintiffs' petition does not use an apostrophe 's' after defendant, thus making it 'defendants DNA'; whereas the Defendants' motion and attached transcript uses an apostrophe 's' therefore, making it 'defendant's DNA.' *Compare* Rec. Doc. 1-1, ¶¶ 77, 97 *with* Rec. Doc. 25-1, at 11; Rec. Doc. 25-2, at 7, line 21.

6

statement,' it is substantially true; and because it contains Ms. Grace's opinion." (Rec. Doc. 25-1, at 10).

Focusing the majority of their opposition on this statement,[3] Plaintiffs contend that Defendants are attempting to "cherry pick each phrase" and that the Court should watch the video as a whole rather than reading the transcripts because Defendants show actual images of Plaintiffs and state their names in the video of Plaintiff Carver a total of seven times and shows pictures of Plaintiff Lee a total of four times within the 37-minute recording. (Rec. Doc. 51, at 6–7). Thus, Plaintiffs contend that the statement is "of and concerning plaintiffs" because they cast directly or indirectly a personal reflection on the plaintiffs and involve group defamation, (*id.* at 7–9); Nancy Grace's statement–"they find the defendants DNA on her person"– refers to all defendants including Plaintiffs, not just Kavion Washington, and that no police report, forensics or news reports states "'defendants DNA,' in the plural, was found on Brooks. . ." (*id.* at 9–10); Nancy Grace's use of the term "they" and "perps" was meant to refer to the Plaintiffs as well as Kavion Washington and Desmond Carter (*id.* at 10); Nancy Grace "assumes the guilt of Plaintiffs, when she stated 'There's no way, this little girl, consented to have sex in the backseat.'" (*id.* at 13); and lastly that the substantial truth doctrine and the subjective opinion doctrine are inapplicable (*id.* at 13–14).

---

[3] Rec. Doc. 51, at 6–14.

Taking up the Plaintiffs' suggestion, the Court watched Crime Show Online as well as listened to the Crime Stories Podcasts when making its determination whether this statement and the others to follow were defamatory. While the Plaintiffs accuse the Defendants of "cherry picking" phrases, it seems they themselves are engaging in the same practice by selectively highlighting certain phrases and terms to support their argument, without considering the full context.

After considering the statement in its context, the Court does not find this statement defamatory. First, it is not 'of and concerning' the Defendants. This statement made by Nancy Grace was only five minutes and twenty-two seconds into the YouTube video. *See* Nancy Grace, *Nancy Grace Analyzes Defense Reaction to Damning Video of Attack on LSU Coed*, (Oct. 20, 2023), https://www.youtube.com/watch?v=RROCpGNKjmI, at 5:21 (hereafter cited as "Crime Show Online"). At the time of this statement in the program, Nancy Grace has neither shown a picture of Plaintiff Casen Carver nor of Plaintiff Everett Lee. Even more so, Nancy Grace has not stated Plaintiffs' names as this point. In fact, Nancy Grace started this program off by referring to the "rape Defendants;" thereby indicating that she is analyzing the defense of the "rape Defendants" in the criminal action associated with Madison Brooks' death. (*See* Rec. Doc. 25-2, at 2, line 11). Plaintiff Everett Lee is not a "rape Defendant" nor a defendant in the criminal action. Moreover, Nancy Grace did not misidentify or improperly quote either of the Plaintiffs during the program. (Rec. Doc. 53, at 7). Nancy Grace also showed photos of Kaivon Washington and Desmond Carter. Thus, Plaintiffs attempt to argue that

8

this statement is 'of and concerning' the Plaintiffs because of mere photographs shown or names stated is unpersuasive.

Regarding the statement itself, the Court finds that this is not 'of and concerning' the Plaintiffs because the first half of the statement—"There's no way, this little girl, consented to have sex in the backseat, of a car, while someone is videoing, and laughing, and she's saying no, and she's drunk, and they find I believe it's anal tears and bruising and"—is not "of and concerning" the Plaintiffs, but concerns Madison Brooks. Also, Nancy Grace, as a former prosecutor turned journalist, is stating her opinion as to her belief why Madison Brooks did not consent. (Rec. Doc. 53, at 5). This opinion was based on disclosed facts by the Plaintiff Carver's Affidavit for Arrest Warrant that Madison Brooks was intoxicated[4] and by a news media reporter that "someone [was] videotaping and laughing." (Rec. Doc. 53, at 5) (citing to Rec. Doc. 25-3, at 30:21–25 ("[Guest Bill Hernandez]: And then plus she was heard in the background on the video telling the suspects 'No and to get off of her.'")). Nancy Grace uses phrases like "There's no way" and "I believe"; therefore, indicating it is her opinion.  Thus, an ordinary viewer of reasonable intelligence and sensibilities hearing the statement would conclude that Nancy is asserting her opinion.

As for the second half of statement, Plaintiffs "cherry pick" at Nancy Grace's use of the term "defendants DNA" and "perps" and "they ejaculated" arguing that

---

[4] Rec. Doc. 1-10, Carver Affidavit for Arrest Warrant ("Mr. Carver stated he asked the victim about her friends, but she was 'drunk' and did not know where her friends were." "Mr. Carver stated he thought the victim was 'drunker' and her speech was slurred." "The medical records showed the victim's blood alcohol content was .319g%..")

9

Defendants "clearly" were referring to Plaintiffs. The Court disagrees. Shortly after the statement was made, Nancy Grace clearly identifies that the DNA found on Madison Brooks' person was Kavion Washington. Crime Show Video at 10:58–11. Nancy Grace referred to a WBRZ article. (Rec. Doc. 51, at 10). Put in context, this statement is part of a question to guest attorney Jarrett Ferrintino— "I mean, is it that hard for you to believe, Ferentino, that the perps withdrew and then ejaculated?" Lastly, the Court finds Plaintiffs' citation to *State ex rel. G.J.G.*, 2019-768 (La. App. 3 Cir. 03/04/20), 297 So. 3d 120, 125 and *In re N.Y. Life Ins. Co. Agents' Class Claimants Solicitation Litig.*, 92 F. Supp. 2d 564 (E.D. La. Apr. 25, 1997) (J. Sear) in support of their argument distinguishable from the incident at hand.[5] Therefore,

---

[5] *State ex rel. G.J.G.* was Louisiana criminal defamation case against a juvenile for falsely alleging having sex with unnamed "ag teacher." *Id.* at 125. The juvenile sent a message to Snapchat account stating, "I f***** my ag teacher best p**** I've had." *Id.* at 122. The Court found him guilty of criminal defamation; and that there was actual malice when it was evident that the teacher he referred to was Mrs. Montie *Id.* at 125.

> There is no doubt that G.J.G. lacked a reasonable belief in the truth of the statement. He admittedly knew that it was false. Moreover, the act was done intentionally. G.J.G. argues that he did not intend to refer to Mrs. Montie, and the text did not mention Mrs. Montie by name. However, the message asserted that he had been intimate with his "ag teacher." Mrs. Montie had taught him "ag" the year before and was currently teaching him carpentry, a class in the "ag" department. Mrs. Montie is the only female "ag teacher" at Grand Lake High School. It is evident that his "ag teacher" is Mrs. Montie. G.J.G. knew that the content of the message was false, and he intentionally sent it to SouthernSchemers for the purpose of having it added to their story about students' sexual conduct with teachers. Thus, in viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could find that the element of malice was proven.

*Id.* at 125. Plaintiffs argue that the present case is even stronger because the Defendants shows images of the Plaintiffs and used their names. (Rec. Doc. 51, at 8).

Plaintiffs next cite to *In re New York Life Ins. Co. Agents' Class Claimants Solicitation Litig.* 92 F. Supp. 2d 564 (E.D. La. Ap. 25, 1997) (J. Sear) which involved group defamation. Plaintiffs were "self-employed, independent insurance agents who sell policies and products of New York Life Insurance Company." *Id.* at 567. Defendants were two law firms and two attorneys. *Id.* Plaintiffs claimed that when the Defendants solicited policy holders to opt out of a class action lawsuit in New York and to join a class action lawsuit in Louisiana they caused numerous policy holders to cancel or fail to renew their policies; and that Defendants misrepresented facts to the public and that its agents defrauded the policy holders. *Id.* A dispute over whether the statements were "of and concerning" the plaintiffs arose. *Id.* at 569. "In particular, [the] defendants argue[d] that since plaintiffs were neither

given the context of the statement, the Court finds that it is not "of and concerning" the Plaintiffs.

Second, Defendants move to dismiss Plaintiffs' claims that the statement in paragraphs 78 and 98 of the petition is actionable in defamation— "In the middle of the night, the rain, heavy traffic flying by, they put her out the car and bam, she gets run over, and dies, after she gets raped." (Rec. Doc. 25-1, 13). Plaintiffs focus on the phrase "they put her out of the car" and argue that this is defamatory because "any reasonable watcher or listener would interpret this statement to mean that Plaintiffs kicked Ms. Brooks out of the vehicle in the middle of a busy highway. . ." (Rec. Doc. 51, at 15). Additionally, Plaintiffs argue that during the episode "Casen Carver's name is mentioned 7 times . . . and Everett Lee's name was mentioned twice" and that Defendants showed actual images of both Plaintiffs. *Id.* Thus, "this is certainly "of and concerning" plaintiffs." *Id.*

After reviewing the programs at issue, the Court finds this is not defamatory. Nancy Grace made this statement approximately seven minutes into the program. Like the previous statement at issue, neither Plaintiffs' pictures were shown, nor were their named yet mentioned at the time Nancy Grace made this statement. Again, Nancy Grace started the Crime Show Online by referring to the "rape

---

named nor identified, the statements could not be "of and concerning" plaintiffs and thus, plaintiffs cannot sustain a cause of action in defamation." *Id.*
    The Court finds citation to these two cases distinguishable and unpersuasive. The court discussed the limited Louisiana jurisprudence regarding group defamation; and the Court finds this unpersuasive to find defamation in this matter.

11

Defendants;" thereby indicating that she is analyzing the defense of the "rape Defendants" in the criminal action associated with Madison Brooks' death. (*See* Rec. Doc. 25-2, at 2, line 11). Plaintiff Everett Lee is not a "rape Defendant" nor a defendant in the criminal action. Moreover, Nancy Grace did not misidentify or improperly quote either of the Plaintiffs during the program. (Rec. Doc. 53, at 7). Nancy Grace also showed photos of Kaivon Washington and Desmond Carter. Thus, Plaintiffs attempt to argue that this statement is 'of and concerning' the Plaintiffs because of mere photographs shown or names stated is unpersuasive. It otherwise would be a "chilling effect" on exercise the First Amendment, not allowing Nancy Grace "breathing space." Since the Court finds that the statement is not "of and concerning" the Plaintiffs, it does not address the parties' other arguments, since if one of the elements for a defamation claim is absent, the cause of action fails. *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La. App. 2 Cir. 6/22/01), 792 So. 2d 832.

Third, Defendants move to dismiss Plaintiffs' claims that the statement in paragraphs 79 and 99 of the petition as not actionable in defamation. (Rec. Doc. 25-1, at 16). The statement is as follows:

> They're really lucky, and I don't get it, that they haven't been charged with felony murder, because she is dead, while a felony was ensuing, they raped her, according to the state it's got to be proven in a court of law of course, then put her out of the car on a busy freeway which is abandoned and malignant heart, which is a theory of murder.

*Id*. Defendants argue that the above statement is not defamatory because it is "substantially true, relies on reports of law enforcement, is not defamatory as a matter of law, is not 'of and concerning' Plaintiffs, and is Ms. Grace's opinion." *Id*.

12

Plaintiffs respond that the statement is defamatory per se because the statement is false as the Plaintiffs did not "put her [Ms. Brooks] out of the car on a busy freeway" (Rec. Doc. 51, at 18) and used the falsity "to accuse Plaintiffs of the additional crime of felony murder," *id.* at 20. In support, Plaintiffs cite, in part, to *Hahn v. City of Kenner*, 984 F. Supp. 436, 441 (E.D. La. 1997) (holding that statements were not substantially true but were defamatory per se when Plaintiff "held his family at bay, resisted arrest, and had to be wrestled to the ground to be disarmed, all of which amount to additional crimes for which [Plaintiff] was never arrested or accused.").

The Court finds this statement is not defamatory per se. Accusations of a crime are considered defamatory per se in Louisiana. *Davis v. Borskey*, 643 So. 2d 179, 183 (La. App. 1 Cir. 1994), *aff'd*, 660 So. 2d 17 (La. 1995). Given the context, the statement is substantially true and Nancy Grace's opinion and not an accusation of a crime. In denying Plaintiffs' *Motion to Remand*, the Court previously considered whether a similar statement was defamatory. The Court considered whether Defendant Ashley Baustert's statement suggesting, according to Plaintiffs, that "they" caused Madison Brooks' death by dropping her off "on Burbank Drive" was defamatory. (Rec. Doc. 34, at 8–9). The Court found the "gist" or "sting" of Defendant Baustert's statement was the fact that the Plaintiffs dropped off Madison Brooks alone on a road at night when she was highly intoxicated without a cell phone, not that she was dropped off on Burbank Drive. *Id.* at 9. The Court reasoned that the Plaintiffs acknowledged that Madison Brooks was alone and intoxicated when they dropped her off and do not dispute that she was left without a cell phone in their petition. (Rec. Doc. 1-1, ¶ 62).

13

The Court finds its prior reasoning applicable here. Nancy Grace is reporting on a crime, a matter of public interest. This inaccuracy of the location of where Madison Brooks exited the vehicle should not lend itself to be actionable as defamation, because it is not a significant variation from the truth. Plaintiffs dropped off Madison Brooks in the vicinity of Burbank Drive, which is the "gist" of Nancy Grace statement; and thus substantially true.

Additionally, the Court finds that this statement is Nancy Grace's opinion. The Court finds that a reasonable viewer of the program would conclude "They're really lucky, and I don't get it, that they haven't been charged with felony murder. . ." to be Nancy Grace's opinion because she expresses her personal feelings or a critique of the legal system. This is not a direct accusation as she states "it's got to be proven in a court of law of course." The phrase "I don't get it" indicates Nancy Grace's confusion to understand why the Plaintiffs not being charged with felony murder occurred. Her use of the term "lucky" is also subjective and appears to reflect her perception that criminal defendants are fortunate given their circumstances.

Fourth, Defendants move to dismiss Plaintiffs' claims that the following statement in paragraphs 82 and 103 of the petition is actionable in defamation:

> These guys should be thanking their lucky stars they're not charged with murder, not sure why they aren't charged with murder, but yet they are actually complaining.

(Rec. Doc. 25-1, at 17). The Court finds this statement is Nancy Grace's opinion as she is first expressing her personal perception that the criminal defendants are fortunate; and second, she is critiquing the state's prosecutorial discretion. This statement is neither true nor false and is purely subjective. Nancy Grace's opinion

14

was based on established facts from police reports and other media outlets. Both the Fifth Circuit and Louisiana state courts have protected expressions of "strong" opinions about persons connected to criminal activity, even if those persons have not been charged with crimes. (Rec. Doc. 25-1, at 18); *See Favre v. Sharpe*, 117 F. 4th 342, 348 (5th Cir. 2024) (applying Mississippi law, but finding that commentator's "strongly stated" opinion that Plaintiff had stolen money from needy people in Mississippi was not defamatory when relied upon facts were publicly known, and Defendant had a right to characterize publicly known facts "caustically and unfairly"); *Breen v. Holmes*, *2016*-1591 (La. App. 1 Cir. 12/7/17), 236 So. 2d 632, 638–39 (finding statement not defamatory when defendant stated Plaintiff had committed "premeditated murder").

Fifth, Defendants move to dismiss the Plaintiffs' claims that the following statement in paragraphs 83 and 104 is actionable in defamation:

> Sometimes you have to go to hell to get the witness to put the devil in jail. I really believe if you tried these four together, put them on the same pot to stew, there would be a conviction, on every one of them, because they're in it together and the video, truly the video, they thought was such a good idea, that is the nail in the coffin.

*Id.* at 18. The Court finds this statement is Nancy Grace's subjective opinion. First, Nancy Grace's signals she is offering opinion rather than asserting facts because of her use of figurative and hyperbolic language such as "go to hell," "put the devil jail" and "nail in the coffin." Although Nancy Grace references "conviction" and the involvement of "four" individuals, she does not provide factual allegations that can be objectively proven true or false. Additionally, the statement hinges on a hypothetical

15

scenario, "if you tried these four together. . ." and then Nancy Grace speculates the outcome, "there would be a conviction." Thus, a reasonable viewer of the Crime Online Show would conclude that Nancy Grace is offering her opinion, not accusing Plaintiff "Lee of rape" as the Plaintiffs suggests. (Rec. Doc. 51, at 22).

Sixth, Defendants move to dismiss Plaintiffs' claims that the following statement in paragraphs 14, 84, and 105 of the petition is actionable in defamation:

> [T]hey gave very detailed statements about what happened to Madi, in fact, the ones in the front seat rotating into the back seat so they can also assault her.

(Rec. Doc. 25-1, at 19). The falsity of the reference to "the ones in the front seat rotating into the back seat" is not disputed. However, the Court must view Nancy Grace's statement in the context of the Crime Stories Podcast. Shortly following this statement, Nancy Grace directs the listener to listen to a voiceover, which clearly states:

> [Madison Brooks was] either raped or ha[d] consensual sex with two of these young men. They take turns. One gets out of the vehicle while the other one has sex with her or rapes her, then they swap over. **While this happens, [Plaintiff] Casen Carver, the driver, and the oldest defendant, his name is [Plaintiff] Everett Lee, they're in the two front seats of this vehicle.**

(Rec. Doc. 25-1, at 22) (citing Rec. Doc. 25-3, Crime Stories Podcast at 37:16) (emphasis in the original). Thus, the voiceover amends Nancy Grace's statement to make it clear to the listener that Plaintiffs did not rotate from the front seat to the back seat. Considering the entirety of the Crime Stories Podcasts, the context in which the allegedly defamatory statement was used, including the amendment made

16

by the voice over, the Court finds, when considered as a whole, that the statement does not make a false and defamatory statement because it is substantially true. The "gist" of the story was that two people took turns assaulting Madison Brooks when one person assaulted her in the back seat and exited the vehicle and the second person "rotated" or "swapped" into the back seat. Additionally, as the voiceover amends the statement, a reasonable listener to the Crime Stories Podcast would know that Plaintiffs Casen Carver and Everett Lee stayed in front seat while their two companions rotated out of the back seat, assaulting Madison Brooks.

Seventh and eighth, Defendants move to dismiss Plaintiffs' claims that the statements, "it gives me no joy in saying any of the things I'm saying tonight, but they are true" in paragraphs 86 and 106; and "may he rot in hell" in paragraph 85 of the petition are defamatory. With regards to the statement in paragraphs 86 and 106, the Plaintiffs argue that "[t]he purpose of this statement . . . is to demonstrate Defendant Grace's actual malice" because Grace had knowledge that Madison Brooks was "dropped off in a neighborhood, yet she maliciously, in reckless disregard for the truth, repeatedly lied and levied additional charges for murder" and therefore, Plaintiffs argue "[t]his proves that all statements pertaining to 'putting Ms. Brooks out of the car' and a 'busy highway' are ALL in reckless disregard of the truth. (Rec. Doc. 51, at 24) (emphasis in original). Regarding the statement "may he rot in hell," Plaintiffs argue the statement shows Defendant Grace's actual malice. (Rec. Doc. 51, at 25). Since the Plaintiffs do not argue that these statements are defamatory in and of themselves, the Court finds these statements are not actionable in defamation.

Additionally, as discussed above, the alleged defamatory statements have failed for other reasons and therefore the Court does not discuss the element of actual malice.

Finally, Defendants move to dismiss Plaintiffs' claim that the statement, "again accuses plaintiffs of murder and 'gang rape,'" in paragraph 11 is defamatory. Plaintiffs respond that this statement is an introduction for its defamatory claims in the petition that would be detailed further in the petition. (Rec. Doc. 51, at 25). As Plaintiffs do not object, the Court finds this statement is not actionable in defamation.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion is **GRANTED**.


New Orleans, Louisiana, this 3rd day of December, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE