# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 2, 2026

Lyle W. Cayce
Clerk

No. 25-30101

CASEN CARVER; EVERETT LEE,

*Plaintiffs—Appellants*,

*versus*

ASHLEY BAUSTERT,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-2158

---

Before WIENER, ENGELHARDT, and OLDHAM, *Circuit Judges*.

PER CURIAM: *

The district court correctly determined that it lacked jurisdiction over certain claims. Instead of dismissing those claims, however, the district court denied them on the merits. That was erroneous, so we vacate the district court's orders and remand for further proceedings.

---

\* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-30101

I

On January 15, 2023, LSU student Madison Brooks was tragically hit by a car and killed on a highway outside of Baton Rouge. According to the Baton Rouge District Attorney, Brooks's death was no accident. The DA alleged that Brooks was on the highway because four men—Casen Carver, Everett Lee, Desmond Carter, and Kaivon Washington—raped Brooks and then dropped her off there. When Brooks's mother, Ashley Baustert, appeared on a Fox News program, she discussed the rape allegations and understandably blamed the men for Madison's death. Carver and Lee sued Baustert, the program's host, Nancy Grace, and Fox News in Louisiana state court, bringing claims for defamation against all three.

Grace and Fox News, citizens of Georgia and New York, respectively, removed the suit to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441(a)–(b). The two out-of-State defendants accused Carver and Lee of improperly joining in-State Baustert solely to defeat diversity and keep the case in Louisiana court. *See id.* § 1441(b)(2). Carver and Lee, in turn, denied that allegation and moved to remand the case.

The district court denied the motion to remand, finding that Baustert had indeed been improperly joined. Instead of *dismissing* the claims against Baustert, however, the district court granted her Rule 12(b)(6) motion and *denied* the claims against her on the merits. Then it awarded fees to Baustert under La. Stat. Ann. § 13:3381(B)(1). Carver and Lee appealed.

II

"[A]ny civil action brought in a State court" may be removed by the defendant if it could have been brought in federal court. 28 U.S.C. § 1441(a). For removal based on diversity jurisdiction, an action "may not be removed if any of the parties in interest *properly joined*" is a citizen of the State in which the action was brought. *Id.* § 1441(b)(2) (emphasis added). So, while a

2

*properly* joined in-State defendant will defeat removal, an improperly joined in-State defendant will not. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572–74 (5th Cir. 2004) (en banc).

Under *Smallwood*, a removing party can establish improper joinder in one of two ways. First, the removing party can show "actual fraud in the pleading of jurisdictional facts"—*e.g.*, that the plaintiff misrepresented a defendant's citizenship and complete diversity is satisfied after all. *See* 13F WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3641.1 (3d. ed. 1998). Second, the removing party can show that "the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse." *Int'l Energy Ventures Mgmt. v. United Energy Grp.*, 818 F.3d 193, 199 (5th Cir. 2016) (emphasis in original). If the plaintiff has not stated at least a plausible claim against the nondiverse defendant, the defendant's presence will not defeat complete diversity. In other words, a plaintiff cannot defeat removal by suing just any in-State defendant. *See Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185–86 (1907). *Smallwood* described this inquiry as "a Rule 12(b)(6)-type analysis" because it considers the complaint's merits, but "the focus of the inquiry must be on the joinder, not the merits." 385 F.3d at 573. Why? Because the improper-joinder/diversity question goes to jurisdiction—not the merits—and never the twain shall meet. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92–93 (1998). And jurisdictional dismissals—including for improper joinder—require dismissal rather than adjudication on the merits. *See id.* at 93; *Int'l Energy*, 818 F.3d at 209.

In this case, however, the district court first found that Baustert was improperly joined under *Smallwood*. Then it adjudicated her Rule 12(b)(6) motion on the merits. That was error—even if an understandable one. Our precedent in this area is notoriously confusing. And a district court can hardly be faulted for adjudicating a Rule 12(b)(6) motion when *Smallwood* itself

requires a "12(b)(6)-type analysis." 385 F.3d at 573. Still, jurisdiction is jurisdiction—and where it is lacking, the district court must *always* dismiss. As the Supreme Court famously said: "Without jurisdiction the court cannot proceed *at all in any cause.*" *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) (emphasis added); *see also, e.g.*, *Steel Co.*, 523 U.S. at 101–02; *Spivey v. Chitimacha Tribe of La.*, 79 F.4th 444, 447 (5th Cir. 2023).

Baustert argues that we may nevertheless uphold the district court's fee award because it is collateral to the district court's merits ruling. Unfortunately, Fifth Circuit precedent forecloses this contention: "If subject matter jurisdiction is based on diversity, a court never has jurisdiction over a nondiverse party. . . . Therefore, as long as a non-diverse party remains joined, the only issue the court may consider is that of jurisdiction itself." *Int'l Energy*, 818 F.3d at 209 (emphasis omitted). In this case, the district court considered the merits, and then it awarded fees *based on its merits ruling*. As the district court explained, it awarded fees pursuant to Baustert's request in her Rule 12(b)(6) motion.

\* \* \*

The district court lacked subject matter jurisdiction over Carver and Lee's claims against Baustert. It therefore could not adjudicate those claims on the merits. Nor could it award fees based on its merits ruling. Nothing in this opinion forecloses the district court from awarding sanctions or fees on any other lawful basis.

VACATED and REMANDED.

4

No. 25-30101

Andrew S. Oldham, *Circuit Judge*, concurring:

I join the court's opinion in full because *McCardle*, *Steel Co.*, *Spivey*, and *International Energy* all required the district court to dismiss the claims against Baustert. *See ante*, at 3. I write separately, however, to explain that the district court retains its power to sanction Lee, Carver, and their attorneys for their misconduct.

I

Federal courts obviously and always have jurisdiction to determine their own jurisdiction. *See, e.g.*, *United States v. United Mine Workers of Am.*, 330 U.S. 258, 290 (1947). And that power necessarily includes the power to sanction jurisdictional misconduct.

Take for example our decision in *Willy v. Coastal Corp.*, 915 F.2d 965 (5th Cir. 1990), *aff'd*, 503 U.S. 131 (1992). In that case, a disgruntled employee (Willy) sued his former employer (Coastal) in Texas court. After Coastal removed the case to federal court, the district court denied remand and granted Coastal's motion for sanctions against Willy for various litigation abuses. *Id.* at 965. After prevailing on appeal on the merits of the removal, Willy then challenged the district court's sanctions order. Willy claimed that the court's lack of jurisdiction over the wrongly removed claims meant that it could not sanction him. *Ibid.*

We rejected that contention because "a district court must possess the authority to impose sanctions irrespective of the existence of subject matter jurisdiction." *Id.* at 967. That was so because sanctions implicated the court's "inherent powers, those considered 'necessary to the exercise of all others.'" *Id.* at 966 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). The fact that the district court lacked jurisdiction over the case did not license Willy to abuse the federal court system. We have affirmed this proposition many times. *See, e.g.*, *Ben E. Keith Co. v. Dining All., Inc.*, 80

5

F.4th 695, 699–700 (5th Cir. 2023); *Ratliff v. Stewart*, 508 F.3d 225, 231 (5th Cir. 2007); *Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 578 n.2 (5th Cir. 2002); *Elliott v. Tilton*, 64 F.3d 213, 214 n.1 (5th Cir. 1995).

What's more, if the court's inherent sanction power were not enough, Congress has provided for fee awards in removed cases. Section 1447(c) provides that a remanding district court "may require payment of just costs and any actual expenses, including attorney fees," where the court determines that it "lacks subject matter jurisdiction" over the removed case. 28 U.S.C. § 1447(c). Courts have long interpreted § 1447(c) to permit fee awards in circumstances where sanctions might not be available, meaning that a party need not act in bad faith to incur fees. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005) ("[A]n award of fees under § 1447(c) is left to the district court's discretion, with no heavy congressional thumb on either side of the scales."). And while § 1447(c) will most often apply where the *removing* party misbehaves, nothing in the statute's text so limits its scope. The logic is the same either way: Parties who waste time and resources on claims that clearly do not belong in federal court should pay, regardless of how the claims arrive there.

## II

On remand, the district court will have full power and discretion to determine whether, how, and to what extent to sanction Carver, Lee, and their attorneys under *Willy* and/or § 1447(c). *See ante*, at 4. Based on the record before us, Baustert is entitled to compensation because none of her supposedly defamatory statements are even close to the line of defamation. And it appears that Carver and Lee joined her in a thinly-veiled and illegitimate effort to prevent removal of their case.

Consider Baustert's four allegedly defamatory statements.

*First*, Baustert stated that the boys "did not drop [Madison Brooks] off in the middle of a neighborhood" as they claimed. ROA.836. Louisiana law asks whether the "gist" of a statement is true to determine whether it can be defamatory. *Zerangue v. TSP Newspapers, Inc.*, 814 F. 2d 1066, 1073 (5th Cir. 1987). Here, the "gist" of this statement rings true. Madison was not dropped off in a safe neighborhood. She was dropped near a busy street—which is why she was tragically struck by a car. It is undisputed that Carver, Lee, and their two companions left Madison a short walk from a dark highway, knowing that she was too inebriated to avoid the danger. Carver and Lee's prevarications about *precisely* where Madison was dropped off are irrelevant: The thrust of Baustert's statement is undoubtedly true, so that statement could not possibly be defamatory. *Ibid*.

*Second*, Baustert blamed the four boys, and Carver in particular, for Madison's death. This statement is not defamatory either. Start with the fact that the thrust of it is truthful: No one disputes that Carver, Lee, and their companions drove Brooks to a remote location and dumped her on the roadside in an inebriated state. So, it is true that the plaintiffs helped cause her death. The exact degree of their responsibility, as well as whether the law will punish it, are separate questions for a separate court. But a grieving mother can hardly be blamed for saying what is obviously true: Leaving a young woman blackout drunk on the side of the road is both reprehensible and a but-for cause of Madison's death.

*Third*, Baustert's statement that she would "like to see" Carver charged with negligent homicide is an opinion. Honest expressions of opinion are not defamatory under Louisiana law. *See Fitzgerald v. Tucker*, 737 So. 2d 706, 719 (La. 1999).

*Fourth*, Baustert predicted the plaintiffs would "act like [sex with Madison] was a consensual act," but stated "[w]e all know it wasn't."

7

No. 25-30101

ROA.837. As the district court pointed out, this statement is also true, and thus not defamatory: Carver and Lee's attorney did claim Madison consented to sex with his clients at a public press conference, fulfilling Baustert's prediction. ROA 841–42. Moreover, while the district court did not address Baustert's assertion that sex between the plaintiffs and Madison was not "a consensual act," again, truth is a defense. Consider the undisputed facts: When Madison was found, her BAC was 0.319%. For reference, a BAC above 0.16% is generally the threshold for serious inebriation—after 0.3%, a person is at risk of fatal alcohol overdose. National Institute of Health, *Blood Alcohol Level*, MEDLINEPLUS (Aug. 12, 2025), https://perma.cc/29C5-ZU5G. It goes without saying that, at that level of intoxication, Madison could not have consented to *anything*, let alone sex with four strangers. So, again, Baustert's statement was not defamatory, and Carver and Lee brought a meritless claim against her.

\*     \*     \*

At a minimum, some or all four of the men in the car with Madison Brooks had sex with a blackout-drunk college student and then left her on the side of the road to die. Carver and Lee then dragged Baustert's grieving mother into a lawsuit under spurious defamation claims so they could try to avoid federal court. Then, in federal court, counsel for the plaintiffs doubled down. Lee's counsel said that *his* client was the "real victim" here. Oral Arg. at 25:37–42. And he defended an earlier press conference in which he posited that "if [Madison] were alive . . . [s]he would not have complained about [her rape] at all." ROA.841.

The district court has ample power to sanction this conduct. With these observations, I concur.

8