UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CASEN CARVER AND EVERETT                    CIVIL ACTION
LEE

VERSUS                                      NO. 24-2158

NANCY GRACE ET AL.
                                            SECTION: "J"(5)

## ORDER AND REASONS

This matter is before the Court on remand from the United States Court of
Appeals for the Fifth Circuit. It concerns the Court's previous award of costs, fees,
and exemplary damages to Defendant Ashley Baustert under Louisiana Revised
Statutes section 13:3381. Upon remand, the Court issued an order for Plaintiffs and
their counsel to show cause why they should not be sanctioned under **(1)** Federal Rule
of Civil Procedure 11(c)(3) (for violation of Rule 11(b)) in conjunction with *Willy v.*
*Coastal Corp.*, 915 F.2d 965 (5th Cir. 1990); **(2)** 28 U.S.C. § 1447(c); **(3)** 28 U.S.C.
§ 1927; and/or **(4)** the Court's inherent authority (Rec. Doc. 77), and a hearing was
held on Thursday, April 16, 2026. Plaintiffs responded to the show cause order (Rec.
Doc. 78), as did Defendant Ashley Baustert (Rec. Doc. 79).

Currently pending for decision is *Ashley Baustert's Amended Motion for Fees*
*and Costs* **(Rec. Doc. 82)**. Plaintiffs Casen Carver and Everett Lee, along with their
attorney Joseph J. Long, opposed the motion (Rec. Doc. 83). Having considered Ashley
Baustert's motion and the legal memoranda, the Fifth Circuit's Mandate, Plaintiffs'
response to the show cause order, the arguments made at the hearing, and the

1

applicable law, the Court finds that Ashley Baustert's *Amended Motion for Fees and Costs* should be **GRANTED IN PART** as explained below. Accordingly, the Court will exercise its inherent powers to sanction Plaintiffs and Mr. Long for their litigation misconduct.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiffs Casen Carver and Everett Lee initially brought defamation claims in Louisiana state court against Defendants Nancy Grace, iHeartMedia Entertainment, Inc., Fox News Network LLC, and Ashley Baustert. Plaintiffs alleged that Nancy Grace and Ashley Baustert made defamatory statements against them in a broadcast regarding Plaintiffs' alleged involvement in the rape and tragic death of Ashley Baustert's 19-year-old daughter, Madison Brooks. On August 30, 2024, Defendant Fox News Network LLC removed the case to this Court based on diversity jurisdiction, arguing that Plaintiffs had improperly joined Ms. Baustert. (Rec. Doc. 1, at 2). The removal took place prior to Ms. Baustert's being served with the state-court petition, so her consent to the removal was not required. Ms. Baustert was later served on September 6, 2024.

Plaintiffs filed a motion to remand the case on October 2, 2024, which the Court ultimately denied based on improper joinder of Ashley Baustert. Prior to this date, however, Ms. Baustert had filed a Rule 12(b)(6) motion to dismiss, in which she also sought "all court costs and reasonable attorney fees incurred, as well as an award for exemplary damages" under Louisiana Revised Statutes section 13:3381 because she claimed, and the Court agreed, that Plaintiffs' claim against her was "fraudulent and

frivolous." (Rec. Doc. 20-1, at 2). Subsequently, the Court denied Plaintiffs' motion to remand on October 25, 2024, finding that Plaintiffs had improperly joined Baustert to prevent removal, and later granted Baustert's 12(b)(6) motion to dismiss. Then, on July 18, 2025, the Court entered a final judgment in Defendants' favor and awarded Baustert $10,728 in attorney's fees and $21,456 in exemplary damages, together with legal interest from date of judgment, under Louisiana Revised Statutes section 13:3381. (Rec. Doc. 73).

Plaintiffs appealed this decision, and the Fifth Circuit held that because the Court had denied Plaintiffs' motion to remand based on the improper joinder of Baustert, the Court never had subject matter jurisdiction over Plaintiffs' claims against Baustert and therefore could not adjudicate her Rule 12(b)(6) motion on the merits. Additionally, the Fifth Circuit ruled that the Court could not "award fees based on its merits ruling." *Carver et al. v. Baustert*, No. 25-30101, 2026 WL 581819, at *2 (5th Cir. Mar. 2, 2026). However, the Fifth Circuit concluded by saying, "Nothing in this opinion forecloses the district court from awarding sanctions or fees on any other lawful basis." *Id.*

After the case was remanded, the Court issued an order for Plaintiffs and their counsel to show cause why they should not be sanctioned under (1) Federal Rule of Civil Procedure 11(c)(3) (for violation of Rule 11(b)) and *Willy v. Coastal Corp.*, 915 F.2d 965 (5th Cir. 1990); (2) 28 U.S.C. § 1447(c); (3) 28 U.S.C. § 1927; and/or (4) the Court's inherent authority. Plaintiffs responded in writing to the Court's order, as did Defendant Ashley Baustert. Further, the Court held a hearing on Thursday, April 16,

3

2026, after which Baustert filed an amended motion for fees and costs (Rec. Doc. 82), which Plaintiffs opposed (Rec. Doc. 83).

## LEGAL STANDARD

Certain Federal Rules of Civil Procedure and statutes such as 28 U.S.C. § 1927 expressly grant courts the power to impose sanctions for specified litigation misconduct. It is also well established, however, that the Federal Rules of Civil Procedure and other statutes do not delineate the full scope of an Article III court's power. Instead, federal courts retain their inherent powers, which are defined as those that "are necessary to the exercise of all others." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)), *superseded by statute on other grounds.*

The Fifth Circuit has emphasized the Supreme Court's holding that a federal court's inherent authority is "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). Although these inherent powers are necessary, they "must be exercised 'with restraint and discretion.'" *Id.* (quoting *Roadway Express*, 447 U.S. at 764). "[I]nherent authority 'is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function.'" *Id.* at 1406–07 (quoting *NASCO, Inc. v. Calcasieu*

4

*Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *aff'd sub nom, Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

Chief among a federal court's inherent powers is the power to sanction contempt and other litigation misconduct. In *Chambers v. NASCO*, the Supreme Court affirmed the Fifth Circuit's decision to award attorney's fees as a sanction for bad-faith litigation conduct and held that "'in narrowly defined circumstances, federal courts have inherent power to assess attorney's fees.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Roadway Express*, 447 U.S. at 765). Specifically, it is permissible for a court to deviate from the "American Rule" and allow fee-shifting "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)).

Under this standard, a court may impose sanctions in the form of attorney's fees when a party "'knowingly or recklessly raises a[n objectively] frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 595 (5th Cir. 2016) (quoting *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 561 & n.4 (5th Cir. 2015)). To be clear, "[p]ursuing 'an aggressive litigation posture' is not an abuse of the judicial process, '[b]ut advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly [is]." *Id.* (quoting *Batson v. Neal Spelce Assocs. Inc.*, 805 F.2d 546, 550 (5th Cir. 1986)).

## DISCUSSION

In her amended motion for fees and costs, Ashley Baustert requests that

(1) the Court award fees and costs to Ms. Baustert for the entirety of the frivolous, bad-faith proceedings against Plaintiffs and Plaintiffs' counsel, totaling $25,635.60, be *in solido*, under 28 U.S.C. § 1447(c) and/or the Court's inherent authority,

(2) award fees and costs against Plaintiffs' counsel, Joseph Long, under 28 U.S.C. § 1927, and

(3) award post-judgment interest under [sic] from the date of the Court's judgment until paid.

(Rec. Doc. 82-1, at 2). As explained above, Plaintiffs and Mr. Long opposed sanctions both in their response to the order to show cause and in their opposition to Ms. Baustert's amended motion for fees and costs. The Court will consider the arguments Plaintiffs presented in these filings in turn. Based on careful consideration of both parties' arguments and the law, the Court has determined that its inherent powers offer the appropriate source for sanctions in this matter. *See Chambers*, 501 U.S. at 50 ("But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.").

### A. PLAINTIFFS' RESPONSE TO THE SHOW-CAUSE ORDER

In their response to the Court's order to show cause, Plaintiffs claim that the Court lacks jurisdiction to sanction their litigation conduct concerning Defendant Ashley Baustert. (Rec. Doc. 78, at 1). First, Plaintiffs assert that they "cannot be

sanctioned for actions they did not take." *Id.* at 2. Specifically, they allege that Baustert was never served with the state-court petition, that she "voluntarily interjected herself into the federal proceedings by filing motions and oppositions, despite being a non-diverse defendant whose presence destroyed federal jurisdiction," and that therefore, Plaintiffs did not take any action against Ms. Baustert in federal court. *Id.* This statement is patently false, and Plaintiffs' counsel, Mr. Long, recognized this fact at the show cause hearing. Ms. Baustert was served with Plaintiffs' state-court petition on September 6, 2024 (Rec. Doc. 79-1, at 1), almost three weeks before she "interjected" herself in the removed proceeding by filing a motion to dismiss. Accordingly, the Court dismisses this frivolous argument because it is based on a false premise.

Next, Plaintiffs contend that because the Court found that they improperly joined Ms. Baustert, the Court never had subject matter jurisdiction to "evaluate the truth or falsity of the alleged defamatory statements [made by Ms. Baustert], determine whether Plaintiffs' claims were 'meritless,' assess Plaintiffs' motives, or make factual findings regarding intoxication, consent, or causation." (Rec. Doc. 78, at 3). Again, Plaintiffs have misrepresented the consequences that flow from the Court's lack of subject matter jurisdiction over their claims against Ms. Baustert, and they have blatantly misstated the law. Plaintiffs are correct in the very narrow sense that this Court never had jurisdiction over their claims against Ashley Baustert because she was a non-diverse defendant who was improperly joined, but the analysis does not end there.

It is well established in the Fifth Circuit that there are "two ways to establish improper joinder." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). One of these is the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court," which usually requires the court to "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* (citations omitted). Although it is true that "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case," *id.*, the Court was duty-bound to conduct this Rule 12(b)(6)-type analysis when Plaintiffs filed their motion to remand. Therefore, under Fifth Circuit precedent, the Court did, in fact, possess the authority to determine whether Plaintiffs' claims were meritless for the purpose of assessing the propriety of joinder. Furthermore, the Court has authority to sanction Plaintiffs for any misconduct in this court proceeding. *See, e.g.*, *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (quoting *NASCO, Inc. v. Calcasieu*, 894 F.2d at 703) ("A district court has the inherent authority to impose sanctions 'in order to control the litigation before it.'").

Additionally, Plaintiffs make much of the fact that they originally filed the defamation claim against Ashley Baustert in state court and not in this Court, from which they extrapolate that this Court cannot sanction them for any arguments advanced in the state-court petition. However, Plaintiffs continued to defend and advance their claims against Ms. Baustert in their motion to remand and subsequent filings before this Court. (Rec. Doc. 34). Rather than concede this point in their

response to the Court's show cause order, Plaintiffs boldly stated that "[a]t no point did Plaintiffs file any motion, pleading, or request for relief against Baustert in federal court. Plaintiffs' only filing was a motion to remand directed at Fox, Grace, and iHeartMedia." (Rec. Doc. 78, at 2). Even a cursory look at Plaintiffs' Table of Contents for their 44-page motion to remand belies this point. (Rec. Doc. 34-1). Examples of section titles in the memo include "Defendant Ashley Baustert Was Properly Joined," "Plaintiff Has Sufficiently Plead [sic] Claims Against Defendant Baustert upon Which Relief Can Be Granted," "Defendant Baustert Defamed Plaintiffs," "Defendant Baustert Is Indespensible [sic] in the Proceedings," etc. Ashley Baustert is the centerpiece of the motion to remand that Plaintiffs filed in this Court.

Mr. Long also opposes sanctions under the Court's inherent authority because he alleges that "this Court's show cause order deprives [him] of due process of law, as it does not particularly describe [his] conduct that is subject to sanction." (Rec. Doc. 78, at 5). Where to begin? Even though the Court finds this claim frivolous and meritless, it will nonetheless address the argument. Previously, the Court chose to sanction Plaintiffs and Mr. Long for their misconduct pursuant to a Louisiana statute; this statute was specifically designed to protect victims of sexual misconduct from fraudulent defamation suits brought by their alleged attackers. *See* La. Stat. Ann. § 13:3381. Although the Fifth Circuit held that this Court could not impose sanctions based on a merits determination, the fact remains that Plaintiffs and Mr. Long received adequate notice of the particular conduct that was subject to sanction: filing a fraudulent and frivolous claim against Ashely Baustert. Furthermore, in her

9

motion to dismiss, Ms. Baustert requested an award for all reasonable fees and costs "because [Plaintiffs'] claim is fraudulent and frivolous" (Rec. Doc. 20-1, at 2), which is the basis for fee-shifting not only under the Louisiana statute but also under the Court's inherent powers when a plaintiff has brought a frivolous claim in bad faith. Subsequently, the Court granted Ms. Baustert's motion based on Louisiana Revised Statutes section 13:3381, which allows an award of court costs, reasonable attorney fees, and exemplary damages *only* when the defamation claim "is determined by the court to be fraudulent or frivolous." La. Stat. Ann. § 13:3381. Therefore, Plaintiffs had notice dating back at least to February of 2025, when the Court granted Ms. Baustert's motion for fees and costs, that they were being sanctioned for filing a fraudulent and frivolous claim.

Then, when the Fifth Circuit ruled on Plaintiffs' appeal, Judge Oldham issued a concurrence in which he emphasized that Plaintiffs "dragged [Madison Brooks's] grieving mother into a lawsuit under *spurious* defamation claims," (emphasis added) and that during oral argument, Plaintiffs' counsel, Mr. Long, "said that *his* client was the 'real victim' here." *Carver et al. v. Baustert*, 2026 WL 581819, at *4 (Oldham J., concurring) (citing Oral Arg. at 25:37–42). Judge Oldham also acknowledged that "Carver and Lee joined [Ms. Baustert] in a thinly-veiled and illegitimate effort to prevent removal of their case." *Id.* at *3. As soon as the Fifth Circuit's mandate came down, the Court issued its order to show cause why Plaintiffs and Mr. Long should not be sanctioned on a basis other than Louisiana Revised Statutes section 13:3381. The Court must consider all of these contextual facts in evaluating due process

because the Fifth Circuit has explained that "[d]ue process. . . is a flexible concept, and the procedures that will suffice to accord a person due process vary 'according to specific factual contexts.'" *Hazeur v. Keller Indus.*, No. 92-3488, 1993 WL 14973, at *6 (5th Cir. 1993) (quoting *Hanah v. Larch*, 363 U.S. 420, 442 (1960)). Based on the sequence of events outlined above, clear explanations in multiple court orders that Plaintiffs' claims against Baustert were frivolous, and on common sense, the Court gave Plaintiffs adequate notice regarding the particular conduct for which they might be sanctioned.

Mr. Long stated the following in his response to the Court's order to show cause: "Here, however, the show cause order of this court does not give particularized notice of what this court deems was 'bad faith' conduct. Thus, the undersigned is only left to guess based on Judge Oldham's concurrence . . . ." (Rec. Doc. 78). Counsel's suggestion that Judge Oldham's concurrence provided the only "clues" as to Plaintiffs' bad faith conduct defies logic and decorum, and the Court finds it disingenuous (at best). Mr. Long has received notice on multiple occasions and had at least five opportunities to be heard regarding his bad-faith conduct in filing a frivolous claim against Ms. Baustert. *See* Rec. Docs. 34, 56, 78, 83, and Show Cause Hearing, Apr. 16, 2026.

**B. PLAINTIFFS' OPPOSITION TO MS. BAUSTERT'S AMENDED MOTION FOR FEES AND COSTS**

In his opposition to *Ashley Baustert's Amended Motion for Fees and Costs*, Plaintiffs' counsel argues that the Court cannot impose sanctions pursuant to the

Court's inherent powers because clear and convincing evidence of bad-faith litigation conduct does not exist. Further, Plaintiffs claim that "Ms. Baustert's motion equates an unsuccessful claim with a bad-faith claim." (Rec. Doc. 83, at 12). Plaintiffs repeatedly contend that their claims against Baustert "required substantive legal analysis under Louisiana tort law and the fraudulent joinder standard," and therefore, these claims were not frivolous. (Rec. Doc. 83, at 1, 8, 11, 12). The Court disagrees.

First, Plaintiffs' petition against all Defendants, which was removed to this Court, was frivolous on its face, and this is especially true of Plaintiffs' claims against Ms. Baustert. The petition included 135 paragraphs and a total of 64 pages—eight (8) of these pages detailed what Defendant Nancy Grace had allegedly said *in the past about other criminal defendants who have no relevance to the instant matter*. This heavy reliance on extraneous matter helps to emphasize, rather than detract from, the frivolous nature of the complaint. More importantly, of the 135 paragraphs in the complaint, a mere three of them discuss the allegedly defamatory statements that Ms. Baustert made.[1] For example, Plaintiffs claimed that the following statement made by Ms. Baustert constituted defamation:

> She gets out the car at 3 o'clock in the morning, without a phone, and is standing in the middle of the street, unaware of where she is, unaware of anything, on a highway where cars are going 55 miles per hour. They did not drop her off in a neighborhood as some of the media portrays,

---

[1] Plaintiffs included a total of six paragraphs outlining Ms. Baustert's allegedly defamatory statements, but the fourth, fifth, and sixth paragraphs merely repeat the first three, but in reference to the other Plaintiff. *Compare* Rec. Doc. 1-1, at ¶¶ 72–74 (claiming that Ms. Baustert made three statements that defamed Plaintiff Carver), *with* Rec. Doc. 1-1, at ¶¶ 92–94 (repeating the same allegedly defamatory statements but claiming that Baustert defamed Plaintiff Lee).

she was dropped off in front of someone's house, that's not the case, she was dropped off on Burbank Drive which is a very black dark highway where cares are going north and south at 55 miles per hour.

(Rec. Doc. 1-1, at ¶ 72; Rec. Doc. 78, at 8). According to their own assertions in the complaint, Plaintiffs objected to this statement because they claimed that Madison Brooks was not dropped off on Burbank Drive but "at Pelican Lakes subdivision, at her request," which is "over 110 yards away from the location on Burbank Drive where she was hit by the ride share vehicle." (Rec. Doc. 1-1, at ¶ 72). Plaintiffs also objected to Ms. Baustert's use of the plural personal pronoun, "they," because it refers to all three of the individuals that were in the car with Madison Brooks.

The claims Plaintiffs make about this statement are a textbook example of claims that are frivolous on their face. No reasonable person could conclude that this statement constituted defamation. When Plaintiffs and their counsel assert that this Court could only determine fraudulent joinder after "substantive analysis of the elements of defamation under Louisiana tort law in light of the specific statements at issue" (Rec. Doc. 83, at 8), they have completely misinterpreted the Court's finding of improper joinder. The substantive legal analysis the Court provided was not necessary to determine that Plaintiffs' claims were frivolous, but rather, it was necessary as part of the Court's duty to explain its legal reasoning.

More egregiously, Plaintiffs and their counsel included statements and allegations in their complaint that serve no purpose other than to harass and intimidate Ms. Baustert. In a section entitled, "Defendants' hateful defamation has caused scorn, hate and ridicule against Carver and Lee and ruined their reputations,"

13

Plaintiffs included the following paragraph concerning their decision to "allow" Madison Brooks to exit their vehicle:

> Plaintiffs were damned if they did, and damned if they didn't, yet Defendants choose to play Monday morning quarterback, and instead of accepting the clear, videoed facts as true, choose to defame and *ruin the lives of these young men*, telling hundreds of thousands, if not millions of viewers that Plaintiffs are rapists and murderers.

(Rec. Doc. 1-1, at 32, ¶ 108 (emphasis added)). Painting Plaintiffs as victims and claiming that Defendants chose to ruin these men's lives constitute reprehensible conduct in light of the circumstances, and ironically, the cited paragraph itself represents "Monday morning quarterbacking" and is completely irrelevant to Plaintiffs' legal claims. Even assuming that Plaintiffs are correct when they say that the Court cannot sanction them for their state-court petition, Mr. Long and his clients continued to defend and advance precisely these frivolous claims before this Court.

Even the most cursory look at Plaintiffs' filings in this court reveal the frivolous nature of their claims against Ms. Baustert. Plaintiffs' litigation conduct has met the Fifth Circuit standard for bad faith on two grounds; not only did they knowingly or recklessly raise an objectively frivolous argument, but also, they did so for the purpose of harassing and intimidating Ms. Baustert. *See Moench*, 838 F.3d at 595.

Next, Plaintiffs object that Ms. Baustert "devotes substantial attention" to statements that Plaintiffs' counsel, Mr. Long, made to the press, and that the Court's inherent powers cannot reach any out-of-court conduct. While Ms. Baustert may have focused on these statements, the Court has not, and they do not form the basis of the Court's award of costs and fees.

14

Finally, Plaintiffs maintain that awarding Ms. Baustert a blanket fee award would be inappropriate in light of the but-for causation standard. In *Goodyear Tire & Rubber Co. v. Haeger*, the Supreme Court defined the but-for standard and provided a pertinent example: "If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award." 581 U.S. 101, 110 (2017). Here, none of Ms. Baustert's fees and costs in defending this frivolous lawsuit "would . . . have been incurred except for the misconduct," and accordingly, this case represents one of those "exceptional cases" in which "the but-for standard . . . permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* The Court finds that clear and convincing evidence of Plaintiffs' and Mr. Long's bad faith exists on the face of their court filings and that Ms. Baustert would not have incurred any attorney's fees or costs but-for their bad-faith litigation conduct. Lastly, the Court, in its discretion, has chosen not to entertain Mr. Long's argument that "the district court's own [jurisdictional] error," and not Plaintiffs' and Mr. Long's conduct, caused Ms. Baustert to incur costs and fees. (Rec. Doc. 83, at 17).

While the "standards for bad faith are necessarily stringent" and a "party should not be penalized for maintaining an aggressive litigation posture," the Fifth Circuit has established that "advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." *Batson*, 805 F.2d at 550. When they filed this suit against Ms. Baustert, Plaintiffs not only burdened her with unnecessary

15

expenditures of time, effort, and money, but also, and more importantly, they did so for the objectively ascertainable improper purpose to harass and intimidate her. There is simply no other explanation for their conduct in bringing the suit in the first place and then defending their indefensible position in subsequent filings before this Court. Further, Plaintiffs' actions in the instant case represent the type of litigation conduct that undermines the integrity of the justice system and lowers the estimation of the courts in the public's eyes.

In sum, Plaintiffs filed a patently baseless and frivolous claim against a grieving mother who had lost her daughter under horrifying circumstances that Plaintiffs played a role in. Then, Ms. Baustert's co-defendants expressly articulated in their notice of removal that Plaintiffs had improperly joined Ms. Baustert in the state-court suit when they said, "And even more grotesquely, and in a brazen attempt to forum shop and defeat federal diversity jurisdiction, [Plaintiffs] blame the deceased victim's Louisiana-resident *mother*, Ashley Baustert, by bringing a patently meritless defamation claim against her." (Rec. Doc. 1, at ¶ 4). Rather than reflecting on this argument and changing course, Plaintiffs dug in their heels and defended their frivolous claims against Ms. Baustert in their forty-four-page Motion to Remand and subsequent court filings. Under these facts, requiring Plaintiffs and their counsel, Mr. Long, to pay Ms. Baustert's reasonable fees and costs is a warranted and necessary exercise of the Court's inherent powers.

16

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that *Ashley Baustert's Amended Motion for Fees and Costs* **(Rec. Doc. 82)** is **GRANTED IN PART** as follows.

The Court finds the amount of fees proposed and documented by Defendant Baustert reasonable. (Rec. Doc. 82). Therefore, Defendant Ashley Baustert shall recover from Plaintiffs, Casen Carver and Everett Lee, and their counsel, Joseph J. Long, who will be liable *in solido*, $25,635.60 in reasonable attorney's fees, together with legal interest from date of judgment until paid.

New Orleans, Louisiana, this 11th day of June, 2026.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

17